UNITED STATES of America

v.

Andrew CROSKEY.

CR. No. 91–123–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 15, 1998.

Andrew Croskey, Maxwell, AL, pro se.

### ORDER

**MYRON H. THOMPSON, District Judge.**

On August 19, 1996, United States Magistrate Judge John Carroll entered a recommendation that defendant Andrew Croskey's motion to vacate, set aside, or correct sentence be denied. Croskey challenged his sentence on the basis that, after *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), his conduct does not constitute a violation of 18 U.S.C.A. § 924(c)(1), which makes it a crime to use or carry a firearm during and in relation to a drug trafficking crime.[1] In his recommendation, the Magistrate Judge concluded that, although the court's instruction to the jury on the 'use' prong of § 924(c)(1) misstated the law under *Bailey,* Croskey's conviction could still stand because the evidence was sufficient under the 'carry' prong. For the reasons given below, the court concludes that the Magistrate Judge's recommendation should be adopted.

### I.

After the Magistrate Judge entered his recommendation, the court issued an order on September 12, 1996, requesting further briefing from both parties on whether *Bailey* requires that Croskey receive a new trial. The United States filed a brief on September 27, 1996, and Croskey's newly-appointed counsel filed a brief on October 11, 1996, and a supplemental brief on November 4, 1996. In addition and in the meantime, on June 8, 1998, the United States Supreme Court decided the case of *Muscarello v. United States,* —— U.S. ——, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), where the Court held that the term 'carry' should be interpreted broadly—and not limited to weapons carried "on the person" or "immediately accessible"—with the principal limitation on the

---

1. Section 924(c)(1) provides:

   "Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried."

term being the words "during" and "in relation to" a drug trafficking offense.

In his recommendation, the Magistrate Judge relied on *United States v. Farris,* 77 F.3d 391, 395–96 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996), where the Eleventh Circuit Court of Appeals upheld a § 924(c)(1) conviction even after the government conceded that evidence of 'use' of a firearm was legally insufficient in light of *Bailey,* because, as the court found, the evidence was sufficient to have supported an affirmative jury finding on the 'carry' prong. *Farris* delved no further than that into issues of plain error.

However, this court—concerned that the recommendation had not addressed distinctions articulated by the Supreme Court between different kinds of trial error, and how those forms of error are appropriately to be treated, *see Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)—solicited the views of the parties.[2] As this court stated in its September 12, 1996, order:

"In *Yates,* confronted with an instance where the jury had been charged with a misstatement of the law, the Supreme Court observed that 'In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.' *Id.* at 312, 77 S.Ct. at 1073."

## II.

### A.

In *United States v. Holland,* 116 F.3d 1353 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 253, 139 L.Ed.2d 181 (1997), the Tenth Circuit Court of Appeals held that a criminal defendant was not prejudiced by an erroneous 'use' instruction at trial, not because the evidence at trial was sufficient to sustain a conviction for carrying under a proper instruction, but rather because the jury, in

effect, must have found the elements necessary to sustain a conviction for carrying under § 924(c)(1). 116 F.3d at 1359. The appellate court explained:

"In reaching this conclusion, we hold that an erroneous 'use' instruction does not require reversal of the conviction when the jury was also instructed without objection on 'carry,' the defendant did not dispute that the firearm was carried on his person or in his vehicle, and the jury verdict necessarily includes an inherent finding of 'carrying during and in relation to the drug crime.' The essential inquiry is whether the jury's verdict, under the instructions given and the nature of the evidence, required the jury to find all the elements of a 'carrying' violation, or stated another way, whether the verdict was the functional equivalent of such a finding. We must be convinced that it was impossible upon the evidence and instructions for the jury to have returned a 'use' conviction without finding all the elements of a 'carrying' violation as well."

*Id.* at 1359 n. 4. Other appellate courts examining for reversible *Bailey* error have agreed that "[t]he essential inquiry is whether the jury's verdict, under the instructions given and the nature of the evidence, required the jury to find all the elements of a 'carrying' violation, or stated another way, whether the verdict was the functional equivalent of such a finding." *Id. See, e.g., United States v. Windom,* 103 F.3d 523, 524 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1716, 137 L.Ed.2d 839 (1997); *Broadway v. United States,* 104 F.3d 901, 905 (7th Cir.1997); *United States v. Pimentel,* 83 F.3d 55, 60 (2d Cir.1996); *United States v. Moore,* 76 F.3d 111, 112 (6th Cir.1996).

This approach is also consistent with those used by the Eleventh Circuit Court of Appeals. Recently, as the United States discussed in its brief in this case, the Eleventh Circuit decided the case of *United States v. Range,* 94 F.3d 614 (1996). There the court was faced not only with a challenge to the sufficiency of the evidence, but also with a challenge to the trial court's instructions to

---

**2.** Of course, *Yates* was overruled on other grounds by *Burks v. United States,* 437 U.S. 1, 18,

98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978); however, this part of its holding remains intact.

the jury on the § 924(c)(1) firearm charge. The court was "convinced that ... the jury based its verdict on the ground on which it was properly instructed," 94 F.3d at 620, and the court concluded that "a properly instructed jury would have found Range guilty of carrying a firearm during and in relation to a drug trafficking offense." *Id.* More recently, in *United States v. Chirinos,* 112 F.3d 1089 (11th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 701, 139 L.Ed.2d 644 (1998), the appellate court stated that "an erroneous jury charge entitles the defendant to reversal of his conviction and remand for a new trial on the count in question only when a reasonable likelihood exists that 'the jury applied the instruction in an improper manner.'" *Id.* at 1096 (quoting *United States v. Chandler,* 996 F.2d 1073, 1085 (11th Cir.1993), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994)). Given the evidence in that case, and the fact that the jury convicted only the single defendant who had a gun in the waistband of his pants for a § 924(c)(1) violation, the court found no such likelihood existed and so upheld the conviction.

B.

■ To properly convict a defendant of carrying a weapon in violation of § 924(c)(1), a jury must find the following elements: the defendant must (i) knowingly (ii) possess and (iii) transport or convey the weapon in some manner (iv) during and in relation to (v) a drug trafficking offense. *Chirinos,* 112 F.3d at 1095d. *See also Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). Possession may be actual, such as by having the weapon on one's person, or constructive, through exercising dominion and control. *United States v. Richardson,* 86 F.3d 1537, 1548 (10th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). A firearm is carried in relation to a drug offense if it has "some purpose or effect with respect to the drug trafficking crime" and its presence was not "the result of accident or coincidence."

*Smith v. United States,* 508 U.S. 223, 238, 113 S.Ct. 2050, 2059, 124 L.Ed.2d 138 (1993). Such purposes or effects include protection and intimidation. *Mitchell,* 104 F.3d at 654. If the weapon and drugs are together in the same place "it is nearly an inescapable conclusion that" the 'in relation' to prong of § 924(c)(1) has been satisfied. *United States v. Molina,* 102 F.3d 928, 932 (7th Cir.1996). It is entirely uncontroversial that 'transporting or conveying' encompasses transportation in a vehicle. *See, e.g., Chirinos,* 112 F.3d at 1095; *United States v. Cleveland,* 106 F.3d 1056, 1065–66 (1st Cir.1997) (listing cases).

Croskey was charged in a four-count indictment. He pleaded guilty to three counts: one count of possession with intent to distribute a controlled substance, 21 U.S.C.A. § 841(a)(1); and two counts of firearm possession, 18 U.S.C.A. § 922(g)(3) and 26 U.S.C.A. § 5861(d). He went to trial only on the § 924(c)(1) charge, for which the jury found him guilty with regard to one loaded weapon found inside a hollow space behind the dashboard or console of his car alongside certain drugs, but not guilty with respect to another weapon found unloaded and locked inside the trunk of the car.

By the first count to which he pled guilty, the element of an underlying drug trafficking offense was satisfied. By the guilty pleas for the two possession counts, two elements, 'knowing' and 'being in possession,' were met.[3] And Croskey does not challenge that he conveyed or transported the weapons in his car.

■ What Croskey does challenge is whether the weapons were present in his car 'during and in relation to' any crime. The element of 'during and in relation to' is common to both the 'use' and 'carry' prongs of a § 924(c)(1) violation, both before and after *Bailey. See, e.g., Holland,* 116 F.3d at 1358; *Richardson,* 86 F.3d at 1548. Thus, in finding defendant Croskey guilty of a § 924(c)(1) violation, the jury must necessarily have found this element. The jury must have

---

**3.** Although a person may violate 18 U.S.C.A. § 922(g)(3) by transporting a weapon, Croskey pled guilty under the indictment to a charge of being an unlawful user of marijuana who know-

ingly possessed firearms that had themselves been transported in interstate commerce, which does not necessarily imply that he was the one who so transported the weapon.

disbelieved Croskey's explanation that the guns were present for his protection for reasons entirely unrelated to the presence of drugs in his car. The jury must also have disbelieved Croskey's argument that neither gun could have been present in furtherance of a drug offense because they were too inaccessible to be of any use in such circumstances. In particular, the fact that the jury convicted Croskey under § 924(c)(1) for the loaded weapon found under the dashboard in close proximity to the drugs, but not for the unloaded weapon in the trunk, shows that they carefully considered this argument and gave it evidentiary weight. Even had the jury believed Croskey's argument with respect to both weapons, that finding would likely have been incorrect, under the law of this circuit that immediate access is not an element of a § 924(c)(1) 'carrying' offense. In any case, carrying a weapon inside a hollow space inside the console is factually indistinguishable from carrying a weapon inside the glove compartment, as occurred in *Farris,* or under the floormat, as happened in *Range.*

The court is certain that, in this case, a properly charged jury would have found all of the elements necessary to convict Croskey of violating § 924(c)(1) by carrying the weapon inside the console during and in relation to a drug trafficking offense. Croskey cannot complain that the jury was not instructed and did not therefore make any findings that he was engaged in a drug-related offense while in possession of and transporting the weapons, since they were not expected to do so in light of his guilty plea to that count of the indictment.

■ But more significantly, a review of the jury instructions this court actually delivered shows that, although erroneous and correct instructions were both present, and 'use' and 'carry' instructions were not fully distinguished, *all* of the elements of a 'carry' offense the court has parsed above were covered in the instruction. Therefore, not only would a properly-instructed hypothetical jury have found all the elements of a 'carry' violation, but in fact this jury *was* given all of the instructions it needed to so find, as follows:

"Now, in order to sustain its burden of proof for the crime of using or carrying a firearm during and in relation to a drug trafficking crime, ... the Government must prove the following two elements beyond a reasonable doubt. First, that the Defendant *committed the crime of possession with intent to distribute,* ... and second, that *during and in relation to* the commission of that crime, the Defendant *knowingly* used or *carried* a firearm.

"... The government must, therefore, show beyond a reasonable doubt that there is some relation or connection between the underlying criminal act ... and the use or possession of the firearm. Therefore, if the firearm is knowingly *within the possession or control* of a person who commits the underlying crime ..., and the circumstances of the case show that, with the defendant's knowledge, the firearm facilitated or had a role in the crime [such as to embolden, protect, or intimidate], then there is a violation of the Statute.

"Now, in determining whether the Defendant has used *or carried* a firearm, you must consider all of the factors received in evidence in the case, including ... the proximity of the Defendant to the firearm ..., the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.

"The Government .... is required [ ] to prove ... that the firearm was in the Defendant's *possession,* or under the Defendant's control at the time the drug *trafficking crime* was committed, and that *during and in relation* to ... that crime, the Defendant *knowingly* used *or carried* the firearm."[4]

---

**4.** These instructions were more thorough and complete than the instructions in *Range,* which read in part:

· "[I]t [is] a separate crime or offense for anyone to use or carry a firearm during and in relation to the commission of a drug trafficking offense.

"A defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant committed the felony offense charged ...; second, that such *offense was a drug trafficking offense;* and third, that the defendant *knowingly* used *or carried* the fire-

Thus, all of the elements of a carrying offense were repeated at least twice in the instructions. In order to convict Croskey of a 'use' offense, therefore, the jury, at a minimum, had to find all of these elements (except 'carried'), in addition to the erroneously-described elements of 'use', which have been omitted here. Nonetheless, given the references to proximity, control, and to circumstances surrounding the presence of the weapon, even the aspects of 'carrying' were brought to the jury's attention and factored in to the description of the offense conduct. And given that, under the undisputed evidence, Croskey could not have 'possessed' the gun without having 'carried' it as well, the court is confident that the jury's verdict, under the instructions given and the nature of the evidence, required the jury to find all the elements of a 'carrying' violation, or was the functional equivalent of such a finding.

### III.

It must be remembered that the *Holland* court did *not* hold that *Bailey* error was not reversible *only* when the jury's verdict, under the instructions given and the nature of the evidence, required the jury to find all the elements of a 'carrying' violation. The *Hol-* *land* court did not preclude the possibility of the existence of other circumstances where *Bailey* error would not warrant setting aside a conviction.

### A.

In *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court explained that before a court "can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' ... (3) that 'affect[s] substantial rights,' ... [and] (4) [that] 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" 520 U.S. at ——, 117 S.Ct. at 1549 (citations omitted). In *Johnson,* the Supreme Court was confronted with a trial court's failure to have submitted to the jury one of the elements—materiality—necessary for the defendant's perjury conviction. The Court found that, assuming that the first three factors are met, the fourth factor was met because "the evidence supporting materiality was 'overwhelming.'" 520 U.S. at ——, 117 S.Ct. at 1550. Similarly, the evidence that Croskey carried the gun is overwhelming and was essentially uncontested at trial.[5]

---

arm ... while committing such drug trafficking offense."

"... [P]ossession of a firearm constitutes use *in relation to* a drug trafficking offense if the firearm played a purpose or function in carrying out the [offense]."

94 F.3d at 617 (emphasis added).

5. To be sure, Justice Scalia reasoned in his concurrence in *California v. Roy,* 519 U.S. 2, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam), that:

"As we held in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), a criminal defendant is constitutionally entitled to a jury verdict that he is guilty of the crime, and absent such a verdict the conviction must be reversed, 'no matter how inescapable the findings to support that verdict might be.' *Id.,* at 279, 113 S.Ct., at 2082. A jury verdict that he is guilty of the crime means, of course, a verdict that he is guilty of each necessary element of the crime. *United States v. Gaudin,* 515 U.S. 506, 520–22, 115 S.Ct. 2310, 2319–20, 132 L.Ed.2d 444 (1995) .... The absence of a formal verdict [on the alternative ground for conviction] can not be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise. To allow the error to be cured in that fashion would be to dispense with trial by jury. 'The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.' *Sullivan, supra,* at 280, 113 S.Ct., at 2082. The error in the present case can be harmless only if the jury verdict on other points effectively embraces this one or if it is impossible, upon the evidence, to have found what the verdict did find without finding this point as well. *See Carella v. California,* 491 U.S. 263, 271, 109 S.Ct. 2419, 2423–24, 105 L.Ed.2d 218 (1989) (SCALIA, J., concurring)."

*Id.* at ——, 117 S.Ct. at 339–40. However, these comments can be reconciled with the opinion in *Johnson,* in which Justice Scalia also joined. In *Holland,* the Tenth Circuit aptly stated that "Justice Scalia's concurrence in *Roy* provides guidance on the inquiry used to determine if an instructional error affects substantial rights," that is, of "actual prejudice in the habeas context." 116 F.3d at 1357. Thus, even if the error affects substantial rights, the court must still resolve whether the fourth factor is satisfied, that is, whether the error seriously affected the fairness, integrity, or public reputation of judicial proceedings; and, here, in Croskey's case, the

B.

In *Johnson,* however, the Supreme Court was confronted with a *direct* appellate challenge to a conviction. It can be reasonably argued from the most recent opinions from the Eleventh Circuit that, in order to prevail on his *collateral* § 2255 claim, Croskey must show "actual innocence." In *Tannenbaum v. U.S.,* 148 F.3d 1262, 1263 (11th Cir.1998), the defendant argued "that when he pled guilty to carrying and using a firearm in violation of § 924, his plea was based solely on the law before the clarification in *Bailey.*" The appellate court rejected this argument stating that "his 'claim may . . . be reviewed in this collateral proceeding if he can establish that the constitutional error in his plea colloquy "has probably resulted in the conviction of one who is innocent," ' " and that "to establish 'actual innocence,' the [defendant] must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.' " 148 F.3d at 1264 (quoting *Bousley v. United States,* 523 U.S. 614, ——, 118 S.Ct. 1604, 1607, 140 L.Ed.2d 828 (1998)). *See also Jones v. United States,* 153 F.3d 1305 (11th Cir.1998). The *Tannenbaum* court found that the defendant had not demonstrated actual innocence. Similarly here, for the above reasons, Croskey has clearly failed to establish actual innocence.

It is therefore the ORDER, JUDGMENT, and DECREE of the court that:

(1) The recommendation of the United States Magistrate Judge, entered on August 19, 1996, is adopted; and

(2) Defendant Andrew Croskey's motion to vacate, set aside, or correct sentence, filed March 7, 1996, is denied.

It is further ORDERED that defendant Croskey's petition to modify sentence, filed March 7, 1996, and his motion for expedited release, filed July 30, 1996, are denied.

fourth factor is not met because, as stated, the evidence of 'carrying' is overwhelming.